**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| MARY NELL WYATT *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 08-0502 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 15 |
| | : | | |
| SYRIAN ARAB REPUBLIC *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**DENYING THE DEFENDANT'S MOTION TO DISMISS**

**I. INTRODUCTION**

This matter comes before the court on the motion to dismiss filed by the Syrian Arab Republic ("Syria" or "the defendant"), in an action arising out of the alleged hostage-taking of two Americans by the Kurdistan Workers Party ("PKK"). The plaintiffs — a hostage, his family and the estate and family of another hostage who is now deceased — seek damages against the PKK under the Antiterrorism Act of 1990, 18 U.S.C. §§ 2331 *et seq.*, and against Syria under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, for its alleged material support of the PKK and participation in the hostage-taking. Syria[1] moves to dismiss the complaint for lack of subject matter jurisdiction. Because the court determines that it has subject matter jurisdiction over this action pursuant to the FSIA, it denies the defendant's motion. Additionally, the court orders the parties to file supplemental briefing addressing the plaintiffs' state law tort claims and whether this case should be consolidated with an earlier pending action involving the same parties.

---

[1]   To date, only Syria has responded to the plaintiffs' complaint.

## II.  BACKGROUND

### A.  Factual and Procedural History

On August 30, 1991, Ronald E. Wyatt and Marvin T. Wilson were traveling near Elmali Village in Bingol Province, Turkey, when they were abducted at gunpoint by PKK terrorists. Compl. ¶¶ 20-21.  The PKK is a Marxist organization that agitates for an independent Kurdish state in southeastern Turkey and has committed numerous acts of terrorism since its inception. *Id.* ¶ 27.  At the time of the abduction, and for many years prior, Syria supported the PKK through the provision of weapons, safe haven, training, logistical aid and other forms of assistance.  *Id.* ¶¶ 29-30.

Wyatt and Wilson were held by the PKK for twenty-one days, during which time they were subjected to harsh conditions.  *Id.* ¶ 22.  Early on in their captivity, at least two Turkish soldiers were killed by the PKK during an unsuccessful rescue operation by Turkish military and security forces.  *Id.* ¶ 25.  "Officers and employees of the [Syrian Ministry of Defense] were present while Wyatt and Wilson were held hostage and otherwise aided, assisted and advised the PKK captors."  *Id.* ¶ 34.  Finally, on September 21, 1991, Wyatt and Wilson escaped from their captors.  *Id.* ¶ 26.

The plaintiffs initially brought suit on July 27, 2001, pursuant to an earlier version of the FSIA.  *See generally* Compl. *Wyatt v. Syrian Arab Republic*, Civ.  01-1628 (D.D.C. July 27, 2001).  On March 24, 2008, the plaintiffs commenced this action, asserting allegations identical to those in their previous action based on the newly enacted changes to the FSIA's terrorism exception.  *See generally* Compl.,  The plaintiffs also assert claims against Syria under the tort laws of Tennessee and Texas, the states in which Wyatt and Wilson were respectively domiciled

when they were taken hostage.  *Id.* ¶¶ 49-79.  Syria filed its motion to dismiss on November 24, 2009.  *See generally* Def.'s Mot.

### B.  Statutory Framework

Foreign sovereigns are immune from suit in the United States unless the action falls under one of the specific exceptions enumerated in the FSIA.[2]  28 U.S.C. § 1604; *Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 196 (D.C. Cir. 2004).  In 1996, Congress created an exception to sovereign immunity, codified at 28 U.S.C. § 1605(a)(7), which allowed plaintiffs to sue foreign states that had committed or supported terrorist acts and that were officially designated as state sponsors of terrorism by the State Department.  28 U.S.C. § 1605(a)(7) (repealed 2008); *see also Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 89 (D.C. Cir. 2002) (discussing the terrorism exception's legislative history); *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 39 (D.D.C. 2009) (providing a thorough history of the terrorism exception and pursuant litigation).  Until 2004, the majority of courts in this district interpreted § 1605(a)(7) and a related amendment, *see* 28 U.S.C. 1605 note, as providing a private cause of action against a foreign state.  *In re Iran*, 659 F. Supp. 2d at 45 n.6; *see also Cronin v. Islamic Republic of Iran*, 238 F. Supp. 2d 222, 233 (D.D.C. 2002) (collecting cases).

In 2004, however, the Circuit ruled that § 1605(a)(7) did not establish a substantive cause of action against foreign state sponsors of terrorism.  *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1027 (D.C. Cir. 2004).  Instead, for those victims who wished to sue foreign states directly, the FSIA's terrorism exception functioned only as a "pass-through," permitting

---

[2]   The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).  If the foreign sovereign is not immune, the federal district courts have exclusive jurisdiction over the action.  28 U.S.C. §§ 1330, 1604; *Daliberti v. Republic of Iraq*, 97 F. Supp. 2d 38, 42 (D.D.C. 2000) (citing *Amerada Hess*, 488 U.S. at 434-35).

plaintiffs to bring suit against foreign sovereigns responsible for terrorist acts based on other sources of law, such as the "tort law of the state jurisdiction where they were domiciled at the time of the terrorist incident giving rise to the lawsuit." *In re Iran*, 659 F. Supp. 2d at 46.

Congress subsequently repealed § 1605(a)(7) in § 1083 of the National Defense Authorization Act for Fiscal Year 2008 ("2008 NDAA"), and replaced it with a new, broader terrorism exception. *See* National Defense Authorization Act for Fiscal Year 2008, Pub. L. 110-181, § 1083, 122 Stat. 3, 338-41 (codified at 28 U.S.C. § 1605A); *see also Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 840 (D.C. Cir. 2009) (citing § 1083, 122 Stat. at 338-44). Section 1605A provides plaintiffs with a substantive cause of action against foreign sovereigns that includes punitive damages as an available remedy.[3]  28 U.S.C. § 1605A(c); *see also In re Iran*, 659 F. Supp. 2d at 58-61, 77-79.

Section 1083(c) of the 2008 NDAA provides for the retroactive application of § 1605A to cases already filed under § 1605(a)(7). § 1083, 122 Stat. at 338-41. Under that provision, a plaintiff may convert a § 1605(a)(7) action by moving the court to have that action considered as having been filed under § 1605A. *Id*. Alternatively, § 1083(c)(3) permits a plaintiff to file a new, "related action" under § 1605A, provided that it "aris[es] out of the same action or

---

[3]  Section 1605A states that foreign sovereigns are not immune when:

> money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605A(a)(1). The provision specifies three additional requirements that must be satisfied for the exception to apply: (1) the foreign state must be designated as a state sponsor of terrorism at the time the act occurred or was designated as such as a result of such an act; (2) the plaintiff must afford the foreign state a reasonable opportunity to arbitrate the dispute if the act occurred within that state's territory; and (3) either the claimant or the victim must have been a United States national at the time the act occurred. *Id*. § 1605A(a)(2).

4

incident" as the original § 1605(a)(7) action, that the original action was timely filed under the previous version of the statute and that the new action is "commenced not later than the latter of 60 days after (A) the date of the entry of judgment in the original action[ ] or (B) the date of the enactment of [the 2008 NDAA, on January 28, 2008]." *Id.*

With the statutory framework laid out in sufficient detail, the court now turns to its resolution of the parties' arguments.

### III.  ANALYSIS

#### A.  The Court Has Subject Matter Jurisdiction Under the FSIA

#### 1.  The Plaintiffs Have Properly Filed the Instant Action Under § 1605A via § 1083(c)(3)

On July 27, 2001, the plaintiffs filed suit under the original terrorism exception to the FSIA, § 1605(a)(7).  *See generally* Compl., *Wyatt*, Civ. No. 01-1628 (D.D.C. July 27, 2001).  On March 24, 2008, the plaintiffs commenced this action under § 1605A.[4]  *See generally* Compl. The defendant contends that this action does not qualify as a related action under § 1083(c)(3) because it is virtually identical to the plaintiffs' original action under § 1605(a)(7).  Def.'s Reply at 14-15.  Consequently, the defendant maintains that the plaintiffs' action is "time-barred," "miscast" and "jurisdictionally deficient," and should therefore be dismissed.  *Id.*; *see also* Def.'s Mot. at 1.  The plaintiffs counter that this action qualifies as a related action under § 1083(c)(3) because it arises from the same "act or incident" as their earlier § 1605(a)(7) action, which they claim was timely commenced in 2001.  Pls.' Opp'n at 4-5.  As a related action, the plaintiffs

---

[4]  The plaintiffs also moved, pursuant to § 1083(c)(2), to convert their § 1605(a)(7) action to a § 1605A action, *see* Pls.' Mot. for Order Pursuant to §1083(c)(2) of the NDAA, *Wyatt*, Civ. No. 01-CV-1628 (D.D.C. March 28, 2008), but that motion was later withdrawn, *see* Pls.' Mot. to Withdraw Mots., *Wyatt*, Civ. No. 01-CV-1628 (D.D.C. July 7, 2008).

argue, this action is timely because it was commenced within sixty days of the enactment of the 2008 NDAA. *Id.*

A party can bring a separate, related action under § 1605A if that action "aris[es] out of the same action or incident" as an earlier action that was timely filed under § 1605(a)(7). 28 U.S.C. § 1605A note (§ 1083(c)(3)). There is no statutory requirement that a related action be distinct from the prior action in any way. *See id.*; *Ben-Rafael v. Islamic Republic of Iran*, 2010 WL 2465411, *1-3 (D.D.C. June 18, 2010) (permitting a separate action under § 1605A to be filed even though the separate action was "based on the same facts set forth in" the original § 1605(a)(7) action); *see also In re Iran*, 659 F. Supp. 2d at 98 (allowing a § 1605A action to proceed after the plaintiffs had already received a default judgment in their § 1605(a)(7) action, to enable the plaintiffs to take advantage of the availability of punitive damages under § 1605A). This action "aris[es] out of the same action or incident" as the plaintiffs' original one, namely the abduction of Wyatt and Wilson. *Compare* Compl. *with* Compl., *Wyatt*, Civ. No. 01-1628 (D.D.C. July 27, 2001). Therefore, this action qualifies as a related action under § 1083(c)(3).

A related action under § 1605A must have been filed within 60 days of the enactment of the 2008 NDAA, which occurred on January 28, 2008. 28 U.S.C. § 1605A note (§ 1083(c)(3)). The plaintiffs filed this complaint on March 24, 2008, *see generally* Compl., 56 days after the enactment of the 2008 NDAA. Thus, this related action is timely. *See* 28 U.S.C. § 1605A note (§ 1083(c)(3)).

Having concluded that the plaintiffs timely filed a § 1605A action that is "related" to their § 1605(a)(7) action, the court holds that the plaintiffs have satisfied the requirements laid out in § 1083(c)(3).

### 3. The Plaintiffs Have Sufficiently Pleaded Facts Necessary to Establish the Court's Jurisdiction

The defendant challenges the sufficiency of the plaintiffs' claim that Syria's material support of the PKK "caused" the alleged injuries resulting from the terrorist act, *i.e.* the abduction of Wyatt and Wilson,[5] and argues, therefore, that this court lacks subject matter jurisdiction to adjudicate the plaintiffs' claims. Def.'s Mot. at 40-45. The plaintiffs respond that their allegations that Syria provided material support to the PKK are sufficient to satisfy § 1605A's jurisdictional causation requirement.[6] Pls.' Opp'n at 19-20.

To establish jurisdiction under the terrorism exception to the FSIA, the plaintiffs "need not establish that the material support or resources provided by [Syria] for terrorist acts contributed *directly*" to the hostage-taking. *Kilburn v. Islamic Republic of Iran*, 2010 WL 1198561, at *16 (D.D.C. Mar. 20, 2010) (citing *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 18 (D.D.C. 1998)); *see also Kilburn*, 376 F.3d at 1130 (stating that "imposing a jurisdictional requirement that a state sponsor's financial assistance to a terrorist organization must be *directly* traceable to a particular terrorist act would likely render § 1605(a)(7)'s material support provision ineffectual"). Instead, the plaintiffs must "alleg[e] facts sufficient to establish a reasonable connection between a country's provision of material support to a terrorist

---

[5]  The plaintiffs also make a claim of extrajudicial killing, in addition to their central claim of hostage-taking, by alleging that PKK terrorists killed at least two Turkish soldiers in the failed attempt to rescue the hostages. Compl. ¶ 31. But as the defendant correctly notes, Def.'s Reply at 15-16, this court has previously determined that the plaintiffs have not stated a claim of extrajudicial killing because the victims of the alleged killings were Turkish soldiers, not Wyatt and Wilson, *Wyatt v. Syrian Arab Republic*, 362 F. Supp. 2d 103, 110-112 (D.D.C. 2005)).

[6]  The plaintiffs also emphasize in their opposition that, because they allege the direct participation of Syrian government personnel in the abduction of Wyatt and Wilson, any question about jurisdictional causation with regard to Syria's alleged provision of material support to the PKK is rendered moot. Pls.' Opp'n at 18. In its reply, the defendant indirectly attacks the factual sufficiency of this allegation of direct Syrian involvement. *See* Def.'s Reply at 17-18. Because the court concludes that the plaintiffs' allegations of material support are sufficient to plead jurisdictional causation, the court need not address whether the plaintiffs' allegation of direct Syrian involvement is sufficient to establish jurisdiction.

7

organization and the damage arising out of a terrorist attack." *Rux v. Republic of Sudan*, 461 F.3d 461, 473 (4th Cir. 2006) (citing *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1128 (D.C. Cir. 2004)); *see also Owens v. Republic of Sudan*, 531 F.3d 884, 895 (D.C. Cir. 2008) (citing *Rux*, 461 F.3d at 474); 28 U.S.C. § 1605A(a)(1) (stating that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States . . . for personal injury or death that was caused by an act" of terrorism either perpetrated by the state or its agent, or materially supported by the state).

Here, the plaintiffs have pleaded that Syria provided a variety of forms of material support to the PKK, including: (1) "weapons, ammunition, and false passports;" (2) the "establishment and maintenance of PKK headquarters and offices in Syria;" (3) "safe haven and shelter in Syria to senior PKK commanders;" (4) "establishment and maintenance of PKK training and military bases near Damascus, in northern Syria, along Syria's border with Turkey, and in the Syrian-controlled Beka'a Valley of Lebanon;" (5) "military and terrorist training . . . by members of the Syrian armed forces and intelligence agencies;" and (6) the "establishment of the PKK's logistical infrastructure in Syria."[7]  Compl. ¶ 30.  These allegations sufficiently plead that Syria's material support to the PKK had a reasonable connection to PKK's terrorist activities, including the hostage-taking of Wyatt and Wilson. *See Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 67-68 (D.D.C. 2008) (noting that evidence which shows a defendant's support in "facilitat[ing] the terrorist group's development of the expertise, networks, military training, munitions, and financial resources necessary to plan and carry out the attack" is

---

[7]  In the plaintiffs' original § 1605(a)(7) action, the defendant challenged the factual accuracy of the plaintiffs' material support allegations and, in response, the court ordered limited jurisdictional discovery. *Wyatt v. Syrian Arab Republic*, 225 F.R.D. 1, 3-4 (D.D.C. 2004). Jurisdictional discovery was never reached, however, and in this § 1605A action, the defendant has not contested the factual accuracy of the plaintiffs' material support allegations. *See generally* Def.'s Mot.

sufficient to find causation); *Rux*, 461 F.3d at 474. Accordingly, the court concludes that the plaintiffs have alleged sufficient facts to support the court's jurisdiction under § 1605(A).

### 4. The Defendant's Attacks on the Validity of the FSIA Fail

The defendant advances several arguments attacking the validity of the terrorism exception to the FSIA, only one of which has not been expressly rejected by the Circuit.[8] The defendant asserts that the FSIA's terrorism exception is unconstitutional because it "exposes" the final judgments of Article III courts to potential recission by the president and Congress, thereby violating the separation of powers between the judicial and political branches.[9] Def.'s Mot. at 29-40. The plaintiffs respond that this argument has already been rejected by another district court. Pls.' Opp'n at 17-18 (citing *Gates v. Syrian Arab Republic*, 646 F. Supp. 2d 79, 88

---

[8] The Circuit has rejected the defendant's argument that the terrorism exception violates Article 2 of the United Nations Charter. *Wyatt v. Syrian Arab Republic*, 266 Fed. Appx. 1, 2 (D.C. Cir. 2008) (stating that Article 2(1) of the United Nations Charter does not conflict with the FSIA's terrorism exception "because § 1605(a)(7) does not treat Syria (and the other terrorism sponsor states) unequally. . . [since a]ny country can come within § 1605(a)(7)'s exception so long as the Secretary of State designates it a terrorism sponsor"). The Circuit has also rejected the defendant's contention that the Secretary of State's ability to selectively designate a particular state as a sponsor of terrorism violates that state's due process rights under the Fifth Amendment. *Price*, 294 F.3d at 96 (holding that "foreign states are not 'persons' protected by the Fifth Amendment"). Lastly, the Circuit has foreclosed the defendant's assertion that the FSIA's terrorism exception allows for cases that present non-justiciable political questions. *Simon v. Republic of Iraq*, 529 F.3d 1187, 1197 (D.C. Cir. 2008), *rev'd on other grounds sub nom. Republic of Iraq v. Beaty*, 129 S. Ct. 2183 (2009) (stating that "[i]f the political branches decide [that] tort suits against a foreign sovereign are contrary to the foreign policy of the Nation, then they may by law remove them from [the court's] jurisdiction").

[9] The defendant provides two recent examples in support of his argument. *See* Def.'s Mot. at 29-40, 34-35. First, the defendant points to a provision in the 2008 NDAA which allowed the president to waive the terrorism exception with regard to Iraq, *id.* at 30, a power which President Bush exercised immediately upon signing the bill into law, *see* Pres. Determ. No. 2008-9, 73 Fed. Reg. 6571 (Jan. 28, 2008); *see also Republic of Iraq v. Beaty,* 129 S. Ct. 2183, 2191-93 (2009) (discussing the President's waiver of § 1083 with regard to Iraq.). Second, the defendant cites the Libyan Claims Resolution Act (the "LCRA"), Pub. L. 110-301, 122 Stat. 2999 (2008), and its effect on terrorism-related claims against Libya, Def.'s Mot. at 30-31; the LCRA provided for the settlement of all terrorism-related claims against Libya, in return for an assurance of Libya's immunity from suit under § 1605(a)(7) and § 1605A. *See* 122 Stat. 2999 § 5(a).

(D.D.C. 2009)).  Although this court agrees that the defendant's argument fails, it grounds its conclusion on somewhat different reasoning than that articulated in *Gates*.[10]

Article III of the U.S. Constitution "gives the Federal Judiciary the power, not merely to rule on cases, but to *decide* them, subject to review only by superior courts in the Article III hierarchy – with an understanding, in short, that 'a judgment conclusively resolves the case' because 'a "judicial Power" is one to render dispositive judgments.'"  *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218-19 (1995) (quoting Frank Easterbrook, *Presidential Review*, 40 Case W. Res. L. Rev. 905, 926 (1990)).  In *Plaut*, the Court addressed the constitutionality of legislation that required the district court to reinstate certain class action suits brought under the Securities Exchange Act despite the fact that a final judgment had already been issued.  *Id.* at 213.  The Supreme Court held that the legislation was unconstitutional because it required the district courts to reopen cases with a final judgment, thereby violating the separation of powers between the judiciary and the legislature.  *Id.* at 240.  In so ruling, the Court observed that the validity of the underlying law that produced the final judgment "should not affect the separation-of-powers analysis."  *Id.* at 229.  Instead, the Court noted that the separation of powers analysis is concerned with "the immunity from legislative abrogation" of an Article III court's final judgment.  *Plaut*, 514 U.S. at 230 (stating that "[t]he issue here is not the validity or even the

---

[10]   *Gates* cited the Circuit's decision in *Owens v. Republic of Sudan* in support of its conclusion that "[t]he Circuit did not find that FSIA violated the constitutional requirement of separation of powers."  *Gates v. Syrian Arab Republic*, 646 F. Supp. 2d 79, 88 (D.D.C. 2009) (citing *Owens v. Republic of Sudan*, 531 F.3d 884, 888 (D.C. Cir. 2008)).  In *Owens*, however, the Circuit addressed the non-delegation doctrine of the separation of powers doctrine.  *See Owens*, 531 F.3d at 887-89.  More specifically, the Circuit determined that it was not an unconstitutional delegation of power for Congress to require the Secretary of State to designate foreign sovereigns as state sponsors of terrorism prior to permitting Article III courts to exercise their jurisdiction under § 1605(a)(7).  *Id.*  Separation of powers arguments concerning non-delegation are distinct from separation of powers arguments addressing the political branches inability to abrogate a final judgment by an Article III court.  *Compare id. with Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995) (discussing separation of powers with regard to the finality of judgments rendered by Article III courts).  Thus, this court is of the opinion that the Circuit's holding in *Owens* is inapposite to the defendant's separation of powers argument.

10

source of the legal rule that produced the Article III judgments, but rather the immunity from legislative abrogation of those judgments themselves").

Here, the defendant contends that the terrorism exception is unconstitutional because the president or Congress may at some point in the future try to rescind a final judgment rendered by the court under the terrorism exception. Def.'s Mot at at 34-40. But, as the Court suggested in *Plaut*, a constitutional attack based on a violation of separation of powers is properly launched against the executive or legislative action that effects the reopening of a judgment, and not against the law pursuant to which the final judgment was made. *See Plaut*, 514 U.S. at 230. The defendant's constitutional challenge is therefore misplaced: it incorrectly challenges the constitutionality of the FSIA when, instead, it should be attacking the constitutionality of those executive and congressional acts that supposedly undermine the integrity of final judgments issued by Article III courts. Thus, the court finds no merit in the defendant's challenges to the validity of the FSIA's terrorism exception.

### C. The Court Orders the Parties to Submit Additional Briefing

In its reply, the defendant argues for the first time that the plaintiffs' complaint is legally insufficient because it asserts claims under the tort laws of Tennessee and Texas instead of proceeding under federal law, as required under § 1605A(c). Def.'s Reply at 14. Because the plaintiffs have not been afforded an opportunity to reply, the court declines to consider the defendant's argument at this time, *see Aleutian Pribilof Islands Ass'n, Inc. v. Kempthorne*, 537 F.Supp.2d 1, 12 n. 5 (D.D.C.2008) (noting that "it is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief" (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C.Cir.1992))), and orders the parties to submit additional briefing on whether the plaintiffs' state tort claims are appropriate under the new

11

terrorism exception framework, and with particular regard to the federal cause of action granted by § 1605A(c).

Lastly, the court observes that there are currently two nearly identical actions on its docket: the plaintiffs' original case brought under § 1605(a)(7) and the instant case brought under § 1605A. The plaintiffs' original action brought under § 1605(a)(7) remains viable, despite the fact that Congress has repealed that provision. *Simon v. Republic of Iraq*, 529 F.3d 1187, 1192 (D.C. Cir. 2008), *rev'd on other grounds sub nom. Republic of Iraq v. Beaty*, 129 S. Ct. 2183 (2009) (holding that an unconverted action can continue to be adjudicated under § 1605(a)(7)); *Oveissi*, 573 F.3d at 840-41 (same).

In a status report filed by the plaintiffs in their original case, they expressed an interest in consolidating both actions and proceeding under § 1605A. *See* Pls.' Status Report, *Wyatt*, Civ. No. 01-CV-1628 (D.D.C. July 1, 2009). The defendant, however, is opposed to consolidation. *See* Def.'s Status Report, *Wyatt*, Civ. No. 01-1628 (D.D.C. July 22, 2009). The court orders both parties to submit additional memoranda specifically addressing whether consolidation is appropriate and, if not, how best to proceed considering the duplicative nature of the actions.

## IV.  CONCLUSION

For the foregoing reasons, the court denies the defendant's motion to dismiss and orders the parties to submit supplemental memoranda on whether the plaintiffs' state law tort claims are appropriate under the new terrorism exception framework and whether the court should consolidate the plaintiffs' two related actions. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 8th day of September, 2010.

RICARDO M. URBINA  
United States District Judge