UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Shaul Stern, *et al.*,      )<br>                             )<br>      Plaintiffs,         )<br>                             )<br>   v.                        )<br>                             )<br>The Islamic Republic of Iran, *et al.*, )<br>                             )<br>      Defendants.         )<br>_____) | Civil No. 00-2602 (RCL) |
| Susan Weinstein, *et al.*,  )<br>                             )<br>      Plaintiffs,         )<br>                             )<br>   v.                        )<br>                             )<br>The Islamic Republic of Iran, *et al.*, )<br>                             )<br>      Defendants.         )<br>_____) | Civil No. 00-2601 (RCL) |
| Jenny Rubin, *et al.*,      )<br>                             )<br>      Plaintiffs,         )<br>                             )<br>   v.                        )<br>                             )<br>The Islamic Republic of Iran, *et al.*, )<br>                             )<br>      Defendants.         )<br>_____) | Civil No. 01-1655 (RCL) |
| Seth Charles Ben Haim, *et al.*, )<br>                             )<br>      Plaintiffs,         )<br>                             )<br>   v.                        )<br>                             )<br>The Islamic Republic of Iran, *et al.*, )<br>                             )<br>      Defendants.         )  | Civil No. 02-1811 (RCL) |

|  |  |
|---|---|
| Seth Charles Ben Haim, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> The Islamic Republic of Iran, *et al.*, <br><br> Defendants. | Civil No. 08-520 (RCL) |
| Ruth Calderon-Cardona, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Democratic People's Republic of Korea, *et al.*, <br><br> Defendants. | Misc. No. 14-648 (RCL) |
| Mary Nell Wyatt, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Syrian Arab Republic, *et al.*, <br><br> Defendants. | Civil No. 08-502 (RCL) |

## MEMORANDUM OPINION

Plaintiffs hold a set of substantial money judgments against defendants Islamic Republic of Iran, Democratic People's Republic of Korea, and Syrian Arab Republic arising out of claims brought under the Foreign Sovereign Immunities Act ("FSIA"). Pursuant to those judgments,

plaintiffs seek to attach the defendants' property allegedly in the possession of the Internet Corporation for Assigned Names and Numbers ("ICANN"). ICANN has moved to quash the writs of attachment served on it. Plaintiffs have, in turn, moved for a six month discovery period and a corresponding extension of time to respond to ICANN's motion to quash and its answers to the writs of attachment. For the following reasons and after consideration of the parties' briefing and the applicable law, the Court holds that ICANN's motion to quash is **GRANTED** and plaintiffs' motion for discovery is **DENIED**.

# I. BACKGROUND

## A. The Internet and the Domain Name System

Any device connected to the Internet is identified by a unique Internet Protocol ("IP") address, consisting of a series of numbers separated by periods. *Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 698 (9th Cir. 2010) (internal citation and quotation marks omitted). Because IP addresses in their bare form are unmemorable, the Domain Name System was created to allow people to more easily remember and find places on the Internet. ICANN, *Beginner's Guide to Domain Names* 3 (2010), *available at* https://www.icann.org/en/system/files/files/domain-names-beginners-guide-06dec10-en.pdf. Under this system, IP addresses are given alphanumeric identifiers called domain names. *Id.* A domain name consists of a top level domain ("TLD") and second level domains within that TLD. *Id.* The TLD is the series of characters that are to the right of the last period in a domain name. For example, ".gov" is the TLD for the domain name assigned to this Court. A second level domain is the series of characters to the left of the last period in a domain name. *Id.* For example, "google" is the second level domain in "google.com." Second level domains are subdivisions of TLDs and are registered within the TLDs. *Office Depot, Inc.*, 596 F.3d at 776 (internal citation and quotation marks omitted).

Country code TLDs ("ccTLDs") are a particular type of TLD which carry a two letter

3

code identifying a relationship to a particular country. ICANN, *ICP-1: Internet Domain Name System Structure and Delegation (ccTLD Administration and Delegation)* (1999), *available at* https://www.icann.org/resources/pages/delegation-2012-02-25-en. The ccTLDs are operated by "managers" for that country. *Id.* Managers' duties include "assignment of domain names, delegation of subdomains and operation of nameservers." *Id.*

Information about the names and locations of the various TLDs on the Internet is stored on the "root zone file," which is the authoritative listing of this information on the Internet. *IANA Functions and Related Root Zone Management Transition Questions and Answers*, Nat'l Telecommc'ns & Info. Admin., U.S. Dep't of Commerce, http://www.ntia.doc.gov/other-publication/2014/iana-functions-and-related-root-zone-management-transition-questions-and-answ (last visited Nov. 6, 2014). The root can be analogized to a phone book for the Internet. *Id.*

With the foregoing foundational concepts in mind, the basic roadmap for what occurs between the moment a user types a domain name into an Internet browser and the moment the corresponding webpage appears on the user's screen can be described. The D.C. Circuit has succinctly done so as follows:

> When ordered to translate an unknown domain name into an Internet Protocol number, a computer will ask its Internet Service Provider's server if it knows the domain name and corresponding Internet Protocol number. If that server lacks the information, it will pass the query to a 'root server,' also called a 'root zone' file, the authoritative and highest level of the domain name system database. The root zone file directs the query to the proper top-level domain zone file, which contains the domain names in a given domain and their corresponding Internet Protocol numbers.

*Thomas v. Network Solutions, Inc.*, 176 F.3d 500, 503–04 (D.C. Cir. 1999) (internal citations omitted). Thus, the Internet Domain Name System operates as something of a pyramid. The root zone file, at the top of the pyramid, contains information on the TLDs within the system and the location of the registries for those TLDs. *Id.* Registries of the TLDs, in turn, contain IP

address information on domain names logged within that TLD, which ultimately leads a computer (and its user) to the final Internet destination looked for. *Office Depot, Inc.*, 596 F.3d at 698–99 (internal citation and quotation marks omitted).

### B. ICANN's Role

ICANN is a non-profit corporation that performs the Internet Assigned Numbers Authority ("IANA") functions under a contract with the United States government. *IANA functions*, Nat'l Telecommc'ns & Info. Admin., U.S. Dep't of Commerce, http://www.ntia.doc.gov/category/iana-functions (last visited Nov. 6, 2014). Of relevance to these proceedings, these IANA functions include managing the process of delegation and re-delegation of TLDs (including ccTLDs). Award/Contract No. SA1301-12-CN-0035 Between U.S. Dep't of Commerce and ICANN ¶ C.2.9.2.c, *available at* http://www.ntia.doc.gov/files/ntia/publications/sf_26_pg_1-2-final_award_and_sacs.pdf. This means that ICANN is responsible for recommending the entities that shall perform the functions of a ccTLD manager and for recommending corresponding changes to the root zone file. *See id.* (stating that ICANN "shall submit its recommendations" regarding delegation or re-delegation of a ccTLD to the Contracting Officer's Representative, i.e. a U.S. government official). "The delegation or redelegation process is designed to assign or re-assign a ccTLD to a manager," with such a change being implemented by a change to the root zone to indicate the TLD and its related manager. *Delegating or redelegating a country-code top-level domain (ccTLD)*, IANA, http://www.iana.org/help/cctld-delegation (last visited Nov. 6, 2014).

### C. Procedural History

Writs of attachment were issued against ICANN on June 24, 2014, seeking defendants' money, property, or credits in ICANN's possession. ECF No. 24.[1] ICANN responded with (1)

---

[1] For the sake of simplicity, all citations of the filings in these matters are to the first named case in the caption, *Stern v. Islamic Republic of Iran*, Civil No. 00-2602 (RCL).

objections and answers to the writs, ECF No. 28, and (2) a motion to quash the writs of attachment, ECF No. 29. Plaintiffs then filed a motion for discovery and for an extension of time to respond to ICANN's motion to quash the writs of attachment in order to better respond to certain factual assertions made in ICANN's motion. ECF No. 46. Each motion is now ripe for consideration.

## II. LEGAL STANDARD AND DISCUSSION

### A. Applicable Law

Federal Rule of Civil Procedure 69(a)(1) provides that the "procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Furthermore, "[u]nder the FSIA, local law on attachment and execution control[s] any dispute." *Estate of Heiser v. Islamic Republic of Iran*, 807 F. Supp. 2d 9, 20 (D.D.C. 2011). The District of Columbia Code states that an "attachment may be levied upon the judgment debtor's goods, chattels, and credits." D.C. Code § 16-544. This includes property in the possession of a third person. *Id.* § 16-507.

### B. Country Code Top Level Domains Are Not Subject to Attachment in the District of Columbia

There is little authority on the question of whether Internet domain names may be attached in satisfaction of a judgment. Indeed, no reported decision of any American court appears to have decided the specific issue of whether a ccTLD may be attached. The Virginia Supreme Court's discussion of these issues in *Network Solutions, Inc. v. Umbro Int'l, Inc.*, 529 S.E.2d 80 (Va. 2000) is helpful in illuminating the questions presented. There, the court held that a domain name could not be garnished by a judgment creditor under the relevant Virginia statute because it was "inextricably bound" to the domain name services provided by the registry operator. *Id.* at 86. The court elaborated: "[W]hatever contractual rights the judgment debtor

has in the domain names at issue in this appeal, those rights do not exist separate and apart from [the registry] services that make the domain names operational Internet addresses." *Id.* The court further observed that allowing garnishment of a registry's services as part of garnishing a right to a domain name would mean that "practically any service would be garnishable." *Id.* at 86–87.

The Court finds this reasoning persuasive as applied to District of Columbia attachment law as well. The ccTLDs exist only as they are made operational by the ccTLD managers that administer the registries of second level domain names within them and by the parties that cause the ccTLDs to be listed on the root zone file. A ccTLD, like a domain name, cannot be conceptualized apart from the services provided by these parties. The Court cannot order plaintiffs' insertion into this arrangement. *Cf. United States ex rel. Global Bldg. Supply, Inc. v. Harkins Builders, Inc.*, 45 F.3d 830, 833 (4th Cir. 1995) (holding that "where the property is in the form of a contract right, the judgment creditor does not 'step into the shoes' of the judgment debtor and become a party to the contract, but merely has the right to hold the garnishee liable for the value of that contract right").

While interpretations of the D.C. Code are sparse, they tend to support this understanding of ccTLDs. The District of Columbia Court of Appeals has held that "money payable upon a contingency or condition is not subject to garnishment until the contingency has happened or the condition has been fulfilled." *Cummings Gen. Tire Co. v. Volpe Constr. Co.*, 230 A.2d 712, 713 (D.C. 1967). Thus, payments under a contract that are conditioned upon completion of the work contracted for are not subject to garnishment because the "existence and amount" of the debt is "contingent and uncertain." *Id.* While this suit does not squarely fit within the rule articulated by the court in *Cummings General Tire*, that rule does illuminate the fact that courts may not, through garnishment proceedings, insert a judgment creditor into an ongoing contractual

arrangement that necessarily requires continued work or services to have value. Here, the ccTLDs only have value because they are operated by ccTLD managers and because they are connected to computers around the world through the root zone.[2] D.C. law does not allow their attachment.[3]

## III. CONCLUSION

For the preceding reasons, the Court concludes that the country code Top Level Domain names at issue may not be attached in satisfaction of plaintiffs' judgments because they are not property subject to attachment under District of Columbia law.

An Order shall issue this date consistent with this Memorandum Opinion.

Signed by Royce C. Lamberth, United States District Judge, on November 10, 2014.

---

[2] The Court notes that judicial decisions have construed domain names to be a form of intangible property. *See, e.g., Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2002). But the conclusion that ccTLDs may not be attached in satisfaction of a judgment under District of Columbia law does not mean that they cannot be property. It simply means that they are not attachable property within this statutory scheme. Indeed, in *Network Solutions*, the Virginia Supreme Court nodded to this precise point in stating that it was not "essential to the outcome of this case to decide whether the circuit court correctly characterized a domain name as a 'form of intellectual property.'" *Network Solutions, Inc.*, 529 S.E.2d at 86.

[3] Because the Court concludes that ccTLDs may not be attached as a matter of District of Columbia law, there are no factual disputes that require further consideration. Therefore, the Court denies plaintiffs' motion for discovery as moot.

8