UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARY NELL WYATT, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil No. 08-502 (RCL) |
| ) | |
| SYRIAN ARAB REPUBLIC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiffs have moved the Court for condemnation and recovery of funds held in a bank account at garnishee bank Abu Dhabi International Bank N.V. ("ADIB"). ECF No. 63. Plaintiffs have so moved in pursuit of partial satisfaction of the judgment awarded against defendant Syria and in their favor by this Court on December 17, 2012. ECF No. 37. Neither ADIB, nor Syria, oppose the motion. Attorneys for Syria, W. Ramsey Clark and Lawrence W. Schilling, have filed a motion to intervene in these garnishment proceedings pursuant to Federal Rule of Civil Procedure 24, claiming an interest in the funds at issue. ECF No. 65. At the invitation of the Court and pursuant to 28 U.S.C. § 517, the United States has also filed a statement of interest regarding the issues raised by these motions. ECF No. 105. Upon consideration of plaintiffs' motion, the motion to intervene, the United States' statement of interest, the evidence submitted, and the applicable law, the Court concludes that plaintiffs' motion for condemnation and recovery will be DENIED.

## I. BACKGROUND

Plaintiffs have moved for condemnation and recovery of Syrian funds deposited in ADIB's Washington, D.C. branch. The funds, according to documentation submitted by the plaintiffs with their motion, are identified as deposited by the Embassy of Syria. ECF No. 63-1. Documentation submitted by Clark and Schilling indicates that the funds constitute a blocked electronic funds transfer between the Embassy of Syria and Clark. *See* ECF No. 65-1; ECF No. 103-1. The transfer, according to Clark, represented "payment of a legal fee for the provision of legal services by myself and Lawrence W. Schilling to the Syrian Arab Republic." W. Ramsey Clark Aff. ¶ 2, ECF No. 65-2.

ADIB blocked the funds on June 13, 2013 pursuant to Office of Foreign Assets Control ("OFAC") sanctions against Syria. ECF No. 65-1. Those sanctions, codified at 31 C.F.R. § 542.201, state that property of the Government of Syria in the United States is "blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in."

The Clerk of the Court issued a writ of attachment to ADIB on May 21, 2014 and the bank responded shortly thereafter, indicating that the Syrian funds were being held as blocked. ECF No. 63-1. Plaintiffs then moved in July for condemnation and recovery before this Court. While that motion and the motion to intervene were pending, OFAC informed ADIB on November 7, 2014 that the original transfer to Clark was now authorized in accordance with the original payment instructions. ECF No. 103-1. The funds continue to be held at ADIB pending the Court's resolution of plaintiffs' motion.

## II. LEGAL STANDARD

Plaintiffs seek to garnish these funds from ADIB on the basis of two statutes: section 1610 of the Foreign Sovereign Immunities Act ("FSIA")—specifically sections 1610(a)(7) and

1610(g)—and section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"). Under section 1609 of the FSIA, property of a foreign state is presumed immune from attachment and execution absent an exception to immunity provided by sections 1610 or 1611 of the statute. 28 U.S.C. § 1609. As a result, when attachment is sought pursuant to section 1610 of the FSIA, the Court is obligated "to determine—sua sponte if necessary—whether an exception to immunity applies," whether or not the foreign state appears to assert its immunity. *Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 785–86 (7th Cir. 2011); *see also Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1128 (9th Cir. 2010) (concluding that courts should consider execution immunity sua sponte). The duty to consider execution immunity also applies to property attached pursuant to section 201 of the TRIA. Pub. L. No. 107-297, § 201, 116 Stat. 2322, 2337–2340 (2002) (codified as amended at 28 U.S.C. § 1610 note) (hereinafter "TRIA § 201"). That section of the TRIA is codified as a note to section 1610 of the FSIA and, therefore, comes within the ambit of section 1609's presumption of execution immunity.

Property is immune from attachment under section 1610 of the FSIA if it is subject to the Vienna Convention on Diplomatic Relations ("VCDR"). The FSIA provides that any exceptions to immunity set forth in the statute are "[s]ubject to existing international agreements to which the United States is a party at the time of enactment." 28 U.S.C. § 1609. The VCDR is one such "existing international agreement." *Compare* Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94-583, 90 Stat. 2891 (1976), *with* Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95 (hereinafter "VCDR") (VCDR entered into force on Dec. 13, 1972). Therefore, property exempt from attachment under the VCDR is also exempt under the FSIA, regardless of how it would be treated under sections 1610 and 1611. *See 767 Third Ave. Assocs. v. Permanent Mission of Republic of Zaire to U.N.*, 988 F.2d 295, 297 (2d Cir. 1993)

(holding that the "diplomatic and consular immunities of foreign states recognized under various treaties remain unaltered by the [FSIA]" and analyzing the VCDR as one such treaty); *cf. Bennett v. Islamic Republic of Iran*, 618 F.3d 19, 21 (D.C. Cir. 2010) (citing 28 U.S.C. §§ 1609–1610) ("Diplomatic properties are generally immune from attachment.").

Section 201 of the TRIA provides an additional exception to execution immunity for property that the statute defines as "blocked assets." Two aspects of the definition of blocked assets are relevant to these proceedings. First, blocked assets do not include property subject to the VCDR if the property is "being used exclusively for diplomatic or consular purposes." TRIA § 201(d)(2)(B)(ii). Second, blocked assets only include property "seized or frozen by the United States" pursuant to enumerated sections of the Trading with the Enemy Act or the International Emergency Economic Powers Act. TRIA § 201(d)(2)(A).

## III. APPLICATION

### A. Foreign Sovereign Immunities Act Section 1610

To pursue attachment of these funds under section 1610 of the FSIA, the plaintiffs must show that the property at issue is not covered by the VCDR. A few portions of the VCDR are relevant to plaintiffs' pending motion for condemnation and recovery. Article 25 requires the United States to "accord full facilities for the performance of the functions of the mission." Part 1(b) of Article 3 defines the functions of a diplomatic mission to include "protecting in the receiving State the interests of the sending State and of its nationals, within the limits permitted by international law." In the event that "diplomatic relations are broken off between two States, or if a mission is permanently or temporarily recalled," Article 45 confirms that the United States has continuing obligations to "respect and protect the premises of the mission, together with its property and archives."

The obligation to "accord full facilities" to a diplomatic mission includes the obligation to forbid the attachment, in satisfaction of a civil judgment, of bank accounts containing funds used for diplomatic purposes. *Liberian Eastern Timber Corp. v. Gov't of Republic of Liberia*, 659 F. Supp. 606, 608 (D.D.C. 1987). To hold otherwise would put to foreign embassies the dilemma of either avoiding United States banks entirely or keeping money in this country subject to the threat of confiscation at any time. *Id.* This would be contrary to the VCDR's stated purpose of "ensur[ing] the efficient performance of the functions of diplomatic missions." *Id.* (quoting VCDR preamble).

In light of these authorities, the Court concludes that the funds at issue are protected from attachment under the VCDR. Undisputed documentation before the Court indicates that the Syrian Embassy attempted to transfer these funds from an account owned by the Embassy. W. Ramsey Clark has provided a sworn affidavit stating that this attempted transfer was initiated by the Syrian Embassy as payment of a legal fee arising out of Clark and Schilling's provision of legal services to Syria in this country. The Embassy's payment, therefore, fits squarely within Article 3's expressly defined "functions of a diplomatic mission," specifically "protecting in the receiving State the interests of the sending State and of its nationals." Paying a legal fee arising out of litigation in the United States, incurred in Syria's defense, is fundamentally an action intended to protect Syria's interests in this country. As a result, the Court cannot order the attachment of this money because to do so would violate the United States' obligation to accord full facilities for the performance of the functions of the Syrian diplomatic mission.

The suspension of Syrian Embassy operations as of March 18, 2014 does not abrogate the immunity attaching to the funds. Bureau of Near Eastern Affairs, U.S. Dep't of State, *U.S. Relations with Syria* (Mar. 20, 2014), http://www.state.gov/r/pa/ei/bgn/3580.htm (confirming the

suspension of Syrian Embassy operations).  First, the attempted funds transfer was blocked on June 13, 2013, prior to the suspension of embassy operations.  As of the date of transfer, then, the funds were property of the existing diplomatic mission, used for a diplomatic purpose.  Second, article 45 of the VCDR requires the United States to continue to "respect and protect" the "property" of the Syrian diplomatic mission, despite the suspension of its operation.  The money in the ADIB account is property of the Syrian Embassy and the United States must continue to protect it to the same extent it would if the Embassy were still functioning. [1]

### B. Terrorism Risk Insurance Act of 2002 Section 201

To prevail on their motion pursuant to section 201 of the TRIA, plaintiffs must show that the funds at issue are "blocked assets."  They are not, for two independent reasons.

First, the funds are excluded from the definition of blocked assets because they are property subject to the VCDR that is being used "exclusively" for "diplomatic . . . purposes."  For the reasons stated above, the funds at issue here are subject to the VCDR.  Moreover, relevant to section 201, the Syrian Embassy's payment of a legal fee incurred in representation of Syria in this country is a "diplomatic purpose" because the payment is in service of a diplomatic function, as defined by Article 3 of the VCDR.  Uncontroverted sworn affidavits from Clark and Schilling indicate that the entirety of the funds in dispute are to be deposited to them as payment for the legal fee owed by Syria.  Therefore, the funds are being used "exclusively" for a diplomatic purpose.  The funds are specifically excluded from the TRIA's coverage.

---

[1] The Court previously stated in *Weinstein v. Islamic Republic of Iran*, 274 F. Supp. 2d 53, 61 (D.D.C. 2003) that the United States, under article 45 of the VCDR, is only obligated to respect and protect the "premises of the mission," i.e. "the buildings or parts of buildings and the land ancillary thereto, irrespective of ownership, used for the purposes of the mission." *Id.* (citing VCDR art. 1).  This statement was incorrect, as it discounted the portion of article 45 that obligates the United States to respect and protect not only the premises of the mission, but its "property" as well.  The Court observes, however, that regardless of this erroneous statement about the VCDR, *Weinstein*'s outcome remains the same.  The accounts at issue were not being used exclusively for diplomatic or consular purposes as is required for attachment under section 201 of the TRIA, the statute being analyzed in that case. *Id.* at 61–62.

Second, the funds are not "frozen or seized" by the United States government at this time. A letter before the Court from the U.S. Department of the Treasury states that the OFAC has reviewed the attempted transfer and determined that ADIB is "authorized to process the transfer in accordance with the original payment instructions." ECF No. 103-1. The transaction is authorized under a specific license. *Id.* This specific license is pursuant to the general license provided by 31 C.F.R. § 542.507(a) and (d), which authorizes the provision of legal services to Syria in defined circumstances and states that payment for those services may be authorized pursuant to a specific license. Because the funds are subject to an OFAC license and may now be transferred without further OFAC intervention, they are no longer "frozen or seized" as required by the statute. *Cf. Estate of Heiser v. Islamic Republic of Iran*, 807 F. Supp. 2d 9, 18 n.6 (D.D.C. 2011) (holding that payments made under a general license were merely "regulated" by OFAC, not "blocked"); *Bank of New York v. Rubin*, 484 F.3d 149, 150 (2d Cir. 2007) (holding that property subject to a general license from the OFAC was not "blocked" within the meaning of the TRIA).

Therefore, regardless of whether the funds were frozen or seized as of the date of service of the writ of attachment or the filing of plaintiffs' motion for condemnation and recovery, the funds may not now be attached pursuant to section 201 because they are no longer frozen or seized. *See United States v. Holy Land Found. For Relief and Dev.*, 722 F.3d 677, 685 (5th Cir. 2013) (citing TRIA § 201) (holding that "[b]y its terms, § 201 does not provide for execution against assets that are not blocked," i.e. not currently blocked). This conclusion aligns with the rule under section 1610 of the FSIA that property is only subject to attachment under that statute if it is present within the United States at the time the Court authorizes execution—not when the garnishee receives notice of the garnishment action against them. *FG Hempishere Assocs. v. Republique du Congo*, 455 F.3d 575, 588–89 (5th Cir. 2006) (reasoning that the language of section 1610(a) does

not permit attachment of "*property that was in the United States* or *property that has been in the United States*") (emphasis in original).  Similarly, the TRIA only speaks of assets that are now blocked.  This interpretation of the statute has the common sense outcome of preventing the attachment of property under the TRIA that *was* blocked but that has since passed into other hands or out of the country.

## IV.  CONCLUSION AND ORDER

For the reasons stated above, it is hereby

**ORDERED** that plaintiffs' motion for condemnation and recovery [ECF No. 63] is **DENIED**; and it is further

**ORDERED** that the motion to intervene [ECF No. 65] is **DENIED** as moot; and it is further

**ORDERED** that the United States must show cause within 21 days of this date why this Memorandum and Order and the filings and orders associated with it [ECF Nos. 63, 65, 66, 73, 96, 99, 100, 103, 104, 105, 107] should not be unsealed and placed on the public docket.  Any memorandum supporting a continued seal on these documents should include proposed redactions allowing for, at minimum, unsealing as many documents as possible.

It is **SO ORDERED**.

Signed by Royce C. Lamberth, United States District Judge, on March 17, 2015.