UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARY NELL WYATT, et al.,<br>                Plaintiffs,<br><br>v.<br><br>SYRIAN ARAB REPUBLIC,<br>                Defendant. | ) ) ) ) ) ) ) ) ) ) ) | No. 1:08-cv-502-RCL |

## MEMORANDUM ORDER

After being kidnapped decades earlier, plaintiffs won a substantial judgment against Syria

in 2012 and are eager to cash in. They are unsatisfied with withdrawing counsel's failed attempts

to collect on the judgment and claim that the attorneys have abandoned efforts to secure the

funds. According to plaintiffs, these are grounds enough for terminating the contingency fee

arrangement with counsel going forward. Withdrawing counsel disagree. Having won the default

judgment for plaintiffs, pursued several collection suits, and secured payouts from a victims'

fund, counsel insist that they have earned their fee and that they are entitled to one-third of any

ultimate recovery on the judgment. The only pay-out on the judgment to date has been

$6,783,921 from the United States Victims of State Sponsored Terrorism Fund (USVSST Fund),

a congressional creation that compensates terror victims such as plaintiffs. 34 U.S.C. § 20144.

Counsel received $1,695,980 of this recovery.[1] Pls.' Opp'n 6-7, ECF No. 125.

This Court will not broaden the scope of its inquiry beyond what is justiciable under Article

III. Withdrawing counsel seek a blanket declaration from the Court that they are entitled to

hypothetical payments arising from hypothetical cases. Federal courts must tread on firmer

---

[1] The USVSST Fund is statutorily prohibited from paying more than 25% of a payment to attorneys. 34 U.S.C.
§ 20144(f)(1).

ground. *See Allen v. Wright*, 468 U.S. 737, 750 (1984) ("Article III of the Constitution confines

the federal courts to adjudicating actual 'cases' and 'controversies.'"). While the Court will issue

no abstract standing judgments, the dispute concerning USVSST Fund payouts is concrete and

justiciable. The USVSST Fund has already approved plaintiffs' application and disbursed

payments to plaintiffs. With another payment expected in January 2020, plaintiffs have

instructed the Fund to sever communications with counsel. Mot. 7, ECF No. 122; Ex. F, ECF

No. 122-6. This alone will be settled by the Court at this time.

Counsel offer only a clumsy and unorganized record of their representation. First, they

suggest they have been working on this case since its inception in 2001. Mot. 2–3, ECF No. 122.

Later, they claim "the undersigned became involved in this case shortly before the July 1, 2012

deadline for appearance of counsel," and point to an email from one of the plaintiffs confirming

counsel's retention and contingency arrangement. *Id.* at 13. Finally, counsel cite a retainer

agreement from December *2015* that claims representation began in *2008*. Mot. Ex. E, ECF No.

122-5. That agreement clarified the contingency arrangement:

> In consideration of the services rendered and to be rendered by Attorney, Client hereby
> agrees to pay Attorney, assign to Attorney, and authorizes the Attorneys to retain out of
> any moneys that may come into Attorney's hand by reason of the above claim, including
> by any claims tribunal or government compensation, a fee of one-third (33.33%) of the
> sum recovered ("Fee") plus any applicable value added tax. In the event any law or
> regulation mandates a lower Fee, the provisions of such law or regulation will supersede
> this agreement with respect to any recovery governed by such law or regulation.

Ex. 5, ECF No. 122-5. Plaintiffs raise an argument that the contingent fee agreement is

unenforceable under D.C. Rule 1.5(e), but only "to the extent [withdrawing counsel] worked on

the case prior to 2012." Pls.' Opp'n 11, ECF No. 125. This Court will look only to the written

agreements and clarifications specifically referring to withdrawing counsel, all of which arose

during or after 2012. The D.C. Rules dispute will thus not come into play.

Plaintiffs are entitled to control their own case and are within their rights to pursue whichever collection methods they desire. They may terminate counsel with or without cause. But they may not nullify a contingency fee agreement without good cause. *King & King, Chartered v. Harbert Int'l, Inc.*, 503 F.3d 153, 156 (D.C. Cir. 2007). "If the attorney substantially performed his tasks before being terminated, he may receive the agreed proportion of the client's eventual recovery." *Id.* Plaintiffs cannot enjoy the benefit of counsel's labor only to withhold the funds that motivated such labor in the first place.

So have withdrawing counsel substantially performed here? In fact they have. They lay out their body of work in their motion: securing a default judgment by presenting evidence satisfactory to the Court; attempting to enforce the judgment by jockeying for priority with other judgment creditors; attempting to enforce the judgment against the Syrian ".sy" top-level domain name; attempting to enforce the judgment against Syrian funds in an Abu Dhabi bank; seeking information by serving subpoenas on United States Department of the Treasury, Office of Foreign Assets Control; meeting with Israeli intelligence officials; preparing plaintiffs' applications for the USVSST Fund. Mot. 3–6, ECF No. 122. Substantial performance does not require that counsel take unreasonable efforts to enforce a judgment, and plaintiffs have not identified a single reasonable alternative that counsel should have employed.

Even if counsel has substantially performed, however, "an attorney terminated for good cause cannot recover a contingent fee." *King & King, Chartered*, 503 F.3d at 157. Plaintiffs claim that counsel's most recent attempts have grown stale, and they do not share counsel's patience to wait until geopolitical winds have shifted before making further attempts at collection. Abandonment certainly constitutes a good cause, but abandonment does not automatically occur upon counsel exhausting their recovery mechanisms. The USVSST Fund

was established precisely because recovering on judgments against state sponsors of terrorism is notoriously difficult. Counsel's preserving resources in anticipation of a more viable recovery route is not unreasonable. Plaintiffs have not offered any persuasive argument that counsel has in fact abandoned the claim. Plaintiffs have utilized an appropriate remedy for their dissatisfaction by terminating withdrawing counsel, but their unhappiness alone does not constitute good cause for the termination.

For the reasons stated herein, plaintiffs' counsel are entitled to the statutory cap of 25% of all future USVSST Fund payments to plaintiffs arising from this Court's judgment. The Court declines counsel's invitation to proclaim their entitlement to speculative future judgments. The motion is thereby **GRANTED** in part and **DENIED** in part. It is **ORDERED** that plaintiffs shall instruct the USVSST Fund to issue future payments in a manner consistent with this order. It is further **ORDERED** that plaintiffs' counsel's motion to withdraw is hereby **GRANTED**.

Plaintiffs' counsel of record Robert J. Tolchin, Esq. is permitted to withdraw, and the Clerk shall terminate Robert J. Tolchin, Esq. as counsel of record for the plaintiffs herein. Plaintiffs' counsel The Berkman Law Office, LLC and the Law Office of Nitsana Darshan-Leitner are entitled to receive their legal fees in this matter which has already proceeded to judgment, in the amount of 25% of any future recovery by the plaintiffs from the United States Victims of State Sponsored Terrorism Fund.

It is **SO ORDERED**.

SIGNED this ___ day of October, 2019.

_____
Royce C. Lamberth
United States District Judge